IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HENRY EDWARD BUNDY, | Civil No. 05-0002-HO |
| Plaintiff, | ORDER |
| v. | |
| MULTNOMAH COUNTY, et al., | |
| Defendants. | |

Plaintiff, a pro se state prisoner, filed this action for damages under 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his Eighth and Fourteenth Amendment rights by failing to prevent another inmate from assaulting him. Defendants filed a motion for summary judgment. Plaintiff did not file a response. Plaintiff filed a motion for extension of the discovery and dispositive motion deadline, a motion to compel discovery, and a motion to substitute defendant. Plaintiff did not file a motion for extension of time to respond to defendants' motion for summary judgment.

Undisputed Facts

> For purposes of a motion for summary judgment, material facts set forth in the concise statement of the moving party . . . will be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

LR 56.1(f). As noted, plaintiff did not file a response or motion for extension of time to file a response.

Plaintiff was incarcerated in Multnomah County jail on May 9, 2001, on charges of child sex abuse, until April 2003 when he was transferred to state prison. Plaintiff was convicted of multiple counts on December 30, 2002.

Except for intermittent placements in disciplinary or mental observation housing units, plaintiff resided in a protective custody housing unit since June 2001 because of the nature of his charges, his mental state and the high profile nature of his case. Plaintiff's November 27, 2002 request to be transported and held at the Multnomah County Courthouse in protective custody was granted.[1]

Plaintiff alleges that his first contact with inmate Bryan Rodgers occurred at the courthouse in mid-December, 2002. Plaintiff alleges that Rodgers commented to plaintiff that plaintiff was "the rapo defending himself." Plaintiff did not

---

[1] The request is dated December 27, 2002. Plaintiff testified that he believes he wrote the request on November 27, 2002, based on the response date of December 2, 2002. Def's ex. 4 at 43-33, ex. 7.

2 - ORDER

report this incident to jail staff.

Plaintiff alleges that his second contact with Rodgers occurred one or two days later at the courthouse, when the two inmates waited for an elevator together in a sally port. Both inmates wore handcuffs and leg irons, and Rodgers spat on plaintiff. Plaintiff testified that he told two escorting deputies that Rodgers spat on him, and that he was supposed to be held separately. Pl's Depo. at 63-64. Plaintiff further testified that the deputies said nothing in response, and that he was not thereafter put into the sally port with other inmates.

Plaintiff next saw Rodgers on January 15, 2003, when Rodgers was moved into unit 6C, plaintiff's protective custody housing unit. Protective custody units house 16 inmates in single cells. Inmates in protective custody are allowed out of their cells, twice per day, for one hour, in groups of eight with a deputy present. This time is known as "walk-out." In January 2003, the available single-celled housing units, apart from disciplinary custody units, totaled 48 beds for male inmates.

Multnomah County Sheriff Sergeant Shawn Skeels of the Classification Unit made the decision to house Rodgers in protective custody. Skeels based this decision on requests by the District Attorney, who reported that Rodgers was tampering with witnesses during his trial, and Deputy Dwayne Flowers, who reported that Rodgers was overhead stating to inmates that if

3 - ORDER

others would join him, he would begin a riot and "kick some deputy ass." The Classification Unit also received information that Rodgers was affiliated with a gang. At the time Skeels decided to house Rodgers in unit 6C, there were no keep-separate orders regarding plaintiff and Rodgers.

Rodgers assaulted plaintiff on January 15, 2003. According to the complaint, the assault caused a blowout fracture of plaintiff's orbit, requiring surgery and a permanent titanium plate. Plaintiff testified that he was "celled in" when Rodgers arrived at unit 6C, and the assault occurred on the first walk-out after Rodgers arrived.

Following the assault, the Classification Unit placed plaintiff on "walk-alone" status. On January 17, 2003, and again in February 2003, plaintiff requested that he be taken off walk-alone status. Defs' ex. 6.

Skeels states in his affidavit,

> Per policy and practice, unless a corrections officer actually sees an altercation or serious incident between inmates, or sees verifiable evidence of an altercation or serious threat, a complaint by one inmate about another will not generate a keep-separate order or a report to the Classification Unit unless the corrections officer observes further conduct or evidence warranting such action. One inmate's spitting on another would not alone constitute a serious altercation. . . If the system allowed inmates to be moved simply based upon an inmate's unverified allegations about another inmate, then inmates could make false accusations in order to be moved out of a cell merely because the inmate does not like his cell mate. Such a system would seriously undermine discipline and order within the jails.

4 - ORDER

Skeels Aff., ¶ 9.

Although he was aware that defendants have a grievance procedure, plaintiff did not file a grievance regarding the assault by Rodgers.

## Plaintiff's Motions

Plaintiff seeks an extension of the discovery and dispositive motion deadline, and to compel discovery of the following categories of documents: (1) documents showing the entry of inmates into sally ports at the courthouse on December 13, 2001, the names of deputies escorting inmates to court functions that day, and observations of the deputies of inmate behavior during the escorts; (2) copies of police reports and other information provided by the Multnomah County Sheriff's Office in the cases of Saban v. Multnomah County and Oregon v. Gordon; (3) a copy of the complaint in the Saban case; (4) complete copies of the Multnomah County Sheriff's Office Operations and Inmate Manuals; and (5) manuals and other documents used to classify inmates.

The court previously granted in whole or in part five motions by plaintiff to extend the discovery and dispositive motion deadline, and three such motions by defendants. Plaintiff last sought discovery from defendants by letter dated March 24, 2006. Counsel for defendants responded by letter dated April 4, 2006. Def's Resp., ex. 2. Since that time, the court has twice

5 - ORDER

extended the discovery deadline in response to plaintiff's motions. Plaintiff does not adequately explain why he did not mail his motion to compel discovery or seek additional discovery from defendants until July 13, 2006, eight days prior to the discovery deadline.

Defendants produced all the documents in the first category of documents that exist and/or can be located. Def's ex. 1 at 1, ex. 2 at 1. Defendants concede that plaintiff was in the sally port with Rodgers on December 13, 2002. As discussed below, the court will assume for the purpose of resolving defendants' motion that the deputies to whom plaintiff complained about Rodgers's spitting did not inform the Classification Unit of the incident.

The Saban and Gordon cases stem from a June 2005 assault by inmate Gordon that resulted in the death of inmate Saban. Plaintiff wants documents produced in these cases to prove that defendants "continued to act in the same manner as they acted in the case before this court," and that Rodgers' assault on plaintiff "is the product of systemic abuse and clear deliberate indifference." Pl's Reply [#60] at 4. Defendants contend that the documents cannot be disclosed due to a protective order filed in the Saban case, and that disclosure would compromise prosecution of the Gordon case. The documents sought by plaintiff concern an assault that occurred more than two years after Rodgers's assault of plaintiff. The circumstances of the

6 - ORDER

assault on Saban have little or no relevance and are not reasonably calculated to lead to admissible evidence. The subsequent assault is insufficient to prove that the county had a policy or practice constituting deliberate indifference to a risk of harm suffered by plaintiff.

From defendants' response, it appears that defendants have furnished or will furnish plaintiff with a copy of the complaint in the Saban case. Furthermore, plaintiff does not demonstrate that he cannot obtain this document from the court in which it was filed. Plaintiff did not previously ask defendants for the operations and inmate manuals. With respect to these documents, the motion to compel is untimely. It further appears from defendants' response that plaintiff has access to the inmate manual.

Based on the foregoing, the court finds that good cause does not exist to extend the discovery and dispositive motion deadline, and plaintiff's motions to compel discovery and for extension of time are denied.

Plaintiff's motion for substitution is also denied. Substituting Sergeant Skeels for Sergeant Doe would be futile. An amended complaint substituting Sergeant Skeels for Sergeant Doe would not relate back to the complaint filed January 4, 2005, and would be untimely. Plaintiff had until January 14, 2005, to assert Section 1983 claims based on his assault by Rodgers.

7 - ORDER

Davis v. Harvey, 789 F.2d 1332, 1333 (9th Cir. 1989).  There is no evidence that Sergeant Skeels received notice of this action within the limitations period, and plaintiff cannot prove that Skeels knew or should have known that he would have been sued but for plaintiff's mistake concerning the identity of the proper party.  ORCP 23C.  Lack of knowledge of a defendant's identity is not a mistake triggering the relation back provisions of ORCP 23C.  Clavette v. Sweeney, 132 F. Supp. 2d 864, 876 (D. Or. 2001).

Defendant's Motion for Summary Judgment

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitle to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The summary judgment record includes plaintiff's grievance log.  The record does not evince that plaintiff grieved Rodgers's housing assignment, defendants' classification policies or Rodgers's assault of plaintiff.  Plaintiff's claims are therefore barred for failure to exhaust administrative remedies.  Porter v. Nussle, 534 U.S. 156 (2002).  To the extent the merits of plaintiff's claims are properly before the court, defendants are entitled to summary judgment, for the reasons that follow.

Prison officials may violate the Eighth Amendment if they fail to take reasonable measures to protect inmates from violence at the hands of other inmates.  Farmer v. Brennan, 511 U.S. 825,

8 - ORDER

<»

833 (1994).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837.

At material times, defendants had a housing classification policy whereby jail staff could submit updates noting inmate behavior and needs and security risks. Def's ex. 11 at 38. Sources of information for updates could include inmate statements and law enforcement information. Id. Classification deputies were required to retrieve updates each shift. Id. Further, inmates were permitted to submit one service request form to the Classification Unit every thirty days, and were directed to immediately notify a deputy of concerns for personal safety in the inmate's current housing unit. Def's ex. 12 at 5.

Neither plaintiff nor defendants know the identities of the deputies to whom plaintiff reported his December 2002 encounter with Rogers in the courthouse sally port. There is no evidence that the deputies submitted updates related to the incident to the Classification Unit. Assuming for argument that a substantial risk of harm to plaintiff may be inferred from the incident, it cannot be known whether the unknown deputies actually inferred such risk.

9 - ORDER

There is no evidence Sergeant Skeels was aware of the sally port encounter between Rodgers and plaintiff when he decided to house Rodgers in the same housing unit as plaintiff. Plaintiff did not submit a classification service request in response to the encounter with Rodgers in the sally port, and did not notify a deputy of concerns for his safety from Rodgers. Skeels considered Rodgers's reported gang affiliation, but there is no evidence that he inferred a substantial risk of harm to plaintiff from Rodgers. Skeels Aff., ¶ 5. Plaintiff testified that during the first "walk-out" after Rodgers arrived in plaintiff's housing unit, he decided to browse at a bookshelf rather than go downstairs to the deputy at the control center "because that was asking for trouble." Def's ex. 4 at 66-67. Neither plaintiff nor anyone else made Sergeant Skeels aware that Rodgers posed any particular risk to plaintiff. Even if plaintiff could substitute Sergeant Skeels as a defendant at this late date, Sergeant Skeels was not deliberately indifferent to a known risk to plaintiff.

On this record, a trier could not find that defendants's housing classification policy did not provide plaintiff with a reasonable level of protection from inmate attack. The policy contains reasonable information gathering mechanisms of which plaintiff did not avail himself with respect to the risk posed by Rodgers. Defendants responded when plaintiff availed himself of these mechanisms in the past. Defendants granted his request to

10 - ORDER

be transported and held separate at the courthouse, although deputies did place plaintiff in the sally port with Rodgers. After plaintiff reminded escorting deputies of his approved request for separate custody and transport, plaintiff was not thereafter transported or held at the courthouse with other inmates.

## Conclusion

Based on the foregoing, plaintiff's motion to substitute defendant [#50] is denied, plaintiff's motion for extension of time [#51] is denied, plaintiff's motion to compel discovery [#53] is denied, and defendants' motion for summary judgment [#44] is granted.  This action is dismissed.

IT IS SO ORDERED.

DATED this   27th   day of August, 2006.

                                           s/ Michael R. Hogan
                                          United States District Judge